UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAZMIK HOVSEPYAN; SUREN HOVSEPYAN; and SHUSHANIK PASKEVICHYAN,<br><br>    Plaintiffs,<br><br>    v.<br><br>GEICO GENERAL INSURANCE COMPANY; and DOES 1 through 15, inclusive,<br><br>    Defendant. | No.  2:19-cv-00899-MCE-CKD<br><br>**ORDER** |

In bringing the present action, Plaintiffs Razmik Hovsepyan, Suren Hovesepyan, and Shushanik Paskevichyan (collectively "Plaintiffs" unless otherwise indicated), claim that Defendant GEICO General Insurance Company ("GEICO" or "Defendant") engaged in bad faith insurance practices with respect to its handling of Plaintiffs' injury claims following a collision involving an uninsured motorist. Plaintiffs' operative First Amended Complaint (ECF No. 1-3), filed in state court, asserts a single cause of action, for breach of the implied covenant of good faith and fair dealing under California law.  GEICO subsequently removed the matter here, citing federal jurisdiction on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332.

///

Presently before this Court is Defendant's Motion for Summary Judgment, or alternatively for partial summary judgment, brought pursuant to Federal Rule of Civil Procedure 56.[1]  According to GEICO, any disagreement here between the parties over the value of Plaintiffs' claim amounted to a legitimate difference of opinion that cannot give rise to bad faith liability.  Defendant further asserts that any delay in adjusting Plaintiffs' claim was not attributable to any inaction on GEICO's part.  Finally, GEICO contends that the instant lawsuit is barred by the applicable statute of limitations in any event.  As set forth below, Defendant's Motion is GRANTED.[2]

**BACKGROUND**

On or about February 13, 2015, a 2003 BMW 328i driven by Plaintiff Razmik Hovsepyan ("Razmik"), and insured under a policy of automobile insurance issued by GEICO, was involved in an automobile collision near the intersection of Folsom Boulevard and Dawes Street in Sacramento, California.  Razmik's son, 17-year old Suren Hovsepyan ("Suren"), and 15-year old niece, Shushanik Paskevichyan ("Shushanik"), were passengers in the vehicle.

Razmik had just executed a left-hand turn from eastbound Folsom onto northbound Dawes and was driving at around 10 miles per hour when a Dodge Ram pickup operated by Nathan Domeier at a similar rate of speed pulled out of the gasoline station located at the intersection, crossed the southbound lane of travel on Dawes, and struck the left driver's corner of the BMW behind the wheel well.

While the police were not notified, all three Plaintiffs went to the emergency room later that day complaining of neck and back pain.  Thereafter, Plaintiffs engaged in a nearly identical course of treatment that ended about three and half months later.  On

---

[1] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

[2] Having determined that oral argument would not be of material assistance, the Court submitted this Motion on the briefs in accordance with E.D. Local Rule 230(g).

February 16, 2015, Razmik and Suren initiated a course of chiropractic treatment from Dawn Fealk. D.C. Both terminated that treatment within a week of each other on May 26, 2015, and June 3, 2015, respectively. Def.'s Appendix of Exhibits ("AOE"), ECF No. 61-8, Ex. 11, pp. 679, 725. Shushanik, for her part, also received chiropractic treatment during almost exactly the same time parameters: between February 16, 2015, and June 3, 2015. Id. at p. 743. All three Plaintiffs further underwent MRI scanning during the same period, and they were also seen four times by Dr. Mikhail Palatnik at All Meds Medical Group. Plaintiffs were primarily diagnosed as having sustained neck and back sprains as a result of the subject accident.

After Domeier's insurer denied coverage, an uninsured motorist claim was established by GEICO for Plaintiffs' injuries in March of 2015. Def.'s Stmt.of Undisputed Facts ("DUF"), ECF No. 61-2, No. 5. The uninsured motorist provisions of the policy provide coverage in the amount of $50,000 per person/$100,000 per accident as follows:

> [W]e will pay damages for **bodily injury** of an **insured**, caused by accident which the **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle, underinsured motor vehicle**, or a **hit-and-run motor vehicle** arising out of the ownership, maintenance or use of that motor vehicle.

DUF No. 1.

If the parties fail to agree on the amount due in uninsured motorist coverage, either party may demand that the claim be arbitrated. Additionally, as a condition for providing coverage, the insured must satisfy certain specific conditions, including submitting to an examination by doctors chosen by GEICO and authorizing GEICO, upon GEICO's request, "to obtain medical reports and copies of records." Id.

On March 31, 2015, once GEICO was notified that Plaintiffs were being represented by the Gavrilov Law Corporation[3] with respect to their injury claims, it sent attorney Ognian Gavrilov ("Gavrilov") a letter asking that his clients sign and return

---

[3] The letter from the Gavrilov firm notifying GEICO of its representation was dated February 20, 2015 but not faxed to GEICO until March 19. Decl. of Fawn Harding, ECF No. 61-4, ¶ 8.o.

3

1  medical authorizations. No such authorizations were ever provided even though GEICO
2  sent the same forms again and despite GEICO's multiple attempts to obtain a status
3  update as to Plaintiffs' condition. DUF Nos. 7, 8. Plaintiffs' counsel did tell GEICO in
4  May of 2015 that Plaintiffs were still treating. Harding Decl., ¶¶ 17-18. Indeed,
5  throughout the remainder of 2015 and early 2016 GEICO's attempts to obtain any
6  information on the claims went largely unheeded. On September 2, 2015, and
7  November 19, 2015, GEICO personnel requested some update from counsel as to his
8  client's status and when a demand could be expected, since GEICO's previous inquiries
9  had gone unanswered. AOE, Ex. 3, pp. 188, 215.

   On February 22, 2016, some nine months after Plaintiffs had completed treating
10 and more than a year following the subject accident, GEICO received uninsured motorist
11 demand letters from Gavrilov asking for an aggregate amount of $121,597 to settle the
12 three claims. DUF No. 11, AOE, Ex. 3, pp. 236-41. At that point, although GEICO had
13 still not received any authorization to obtain Plaintiffs' complete medical records, GEICO
14 noted that Plaintiffs had stopped treating less than four months after the accident and
15 were not making any claim for future or ongoing medical treatment. See Decl. of Bill
16 Webster, ECF No. 61-7, ¶ 10.r. Consequently, GEICO responded on April 1, 2016, by
17 offering $39,047.44 to settle all three claims. AOE, Ex. 3, pp. 250-52. Although Plaintiffs'
18 medical bills together totaled some $26,955,[4] some $11,700 of that amount was for MRI
19 scans alone. Webster Decl., ¶ 10. Still, the amount offered included nearly $13,000 in
20 general "pain and suffering" damages despite the fact that GEICO had not yet even
21 received Plaintiffs' complete medical records, let alone verification as to Plaintiffs' current
22 symptomatology.
23
24  Nonetheless, by letter dated April 15, 2016, Gavrilov claimed GEICO's offers were
25 made in bad faith and indicated he was giving the company time to increase its offer,

---

[4] While Plaintiffs' demand letter initially indicated higher numbers, Plaintiffs ultimately verified the $26,955 figure in their interrogatory responses, and at arbitration both sides agreed that was the correct total for Plaintiffs' medical specials. Consequently, while the record contains other numbers elsewhere, the Court will use $26,955 for purposes of this Memorandum and Order.

"not doing that out of the goodness of my heart but to collect further evidence for my client's subsequent insurance bad faith claim." AOE, Ex. 3, p. 260.  While GEICO did increase its aggregate offers to $41,250 on April 21, 2016 (id. at p. 261), Gavrilov did not counter and instead demanded arbitration on behalf of his clients on June 8, 2016.  Id. at p. 268.  By June 29, 2016, GEICO retained counsel, and its attorneys sent various discovery requests in order to obtain basic substantiation for Plaintiffs' claims, including requests for production and interrogatories.  Once arbitration proceedings were commenced, GEICO was also able to subpoena medical records since Plaintiffs' counsel had never provided the authorizations needed to do so beforehand.

Although Gavrilov told a GEICO adjuster in August of 2016 that Plaintiffs' previously made $121,497 global settlement demand had been tendered on a "take it or leave it basis" (Webster Decl., ¶ 18), Gavrilov nonetheless tendered, on September 16, 2016, formal Offers to Compromise under California Code of Civil Procedure § 998, totaling $75,000.  AOE, Ex. 4, pp. 340-42.  Some two weeks later, Gavrilov rescinded his § 998 demand on behalf of Suren Hovsepyan and countered with a new aggregate request for $83,000.  Webster Decl, ¶¶ 20, 23; AOE, Ex. 4, p. 343.  GEICO had not yet even had the opportunity to depose Plaintiffs at this time.

When GEICO did obtain Plaintiffs' depositions on October 3, 2016, they confirmed that they had completed treatment over a year beforehand and had no physical limitations from the accident.  DUF No. 23.  They nevertheless still claimed to experience some accident-related discomfort.  Although GEICO felt this testimony did not warrant a higher pain and suffering allowance, it claims that "in the interest of compromise," its aggregate offer to Plaintiffs was increased to $44,000 by way of statutory offers to compromise issued in January of 2017.  Webster Decl., ¶ 30; Decl. of Terence Phan, ECF No. 61-6, ¶¶ 14-15; AOE, Ex. 17, pp. 879-89.  Gavrilov replied by letter dated January 31, 2007, and rejected Defendant's offers.  He urged GEICO to simply "tender the amounts requested by my clients" without spelling out just what those demands

///

5

were, a cryptic response given the widely divergent sums that had previously been demanded as reiterated above. AOE, Ex. 4, p. 353.

After the parties' attempt to agree upon an arbitrator proved unsuccessful, the Hon. Brian R. Van Camp (Ret.) was appointed in June under the auspices of the American Arbitration Association as provided for in GEICO's policy. Phan Decl., ¶¶ 11-13. Judge Van Camp ultimately set an evidentiary hearing for October 31, 2017.

Since Plaintiffs continued to voice some symptomatology at the time of their depositions, GEICO states it decided to schedule independent medical evaluations prior to arbitration as a tool to further assess the nature and extent of Plaintiffs' injuries prior to the arbitration, and presumably also as a defensive measure depending on the examiner's ultimate findings. GEICO accordingly made arrangements to have all three Plaintiffs seen on September 26, 2017, by Dr. Vernon Fong, a fellowship trained orthopedic surgeon. In subsequent reports dated October 20, 2017, Dr. Fong diagnosed various neck and back strains and, in the case of Suren Hovsepyan, a shoulder contusion. Dr. Fong's examination, however, revealed no current objective findings that he could attribute to the accident and he believed that any injuries attributable to the accident had since resolved as to all three Plaintiffs. AOE, Ex. 9, pp. 612-25.

Dr Fong did, however, believe that the majority of the treatment Plaintiffs had received, aside from the four visits each had had with Dr. Palatnik, were reasonable. Following those findings, GEICO increased its aggregate offer for Plaintiffs' three claims to $52,955. DUF No. 30; Decl of Amber Meyer, ECF No. 61-5, ¶ 19, Phan Decl., ¶¶ 24, 26. This covered all of Plaintiffs' claimed $27,000 in medical expenses and offered nearly the same amount for their respective general damages. Gavrilov did not respond other than to increase his evaluation of Plaintiffs' damages to $151,955 as set forth in his arbitration brief served on October 25, 2017, some six days before the hearing. AOE, Ex. 13, pp. 771-78.

At arbitration, while both sides agreed that medical specials totaled just $27,000, Plaintiffs wanted $30,000 to $50,000 each for pain and suffering despite their relatively

short four-month period of treatment. This put Plaintiffs' aggregate demand at $151,955 as previously stated, a figure more than $50,000 over the policy limit available to cover their injuries. GEICO, on the other hand, argued the claims were worth a total of $52,955. Id. at p. 768.

In his November 30, 2017, award, Judge Van Camp awarded the three Plaintiffs a total of $80,955, which represented some $14,000 and $20,000 each for general damages over the amount of their aggregate medical specials of $26,944. This was not even half of what Plaintiffs had requested, and about fifty percent more than GEICO's last aggregate offer. AOE, Ex. 14, p. 780-783.

## STANDARD

The Federal Rules of Civil Procedure provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

Rule 56 also allows a court to grant summary judgment on part of a claim or defense, known as partial summary judgment. See Fed. R. Civ. P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995). The standard that applies to a motion for partial summary judgment is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a); State of Cal. ex rel. Cal. Dep't of Toxic Substances Control v. Campbell, 138 F.3d 772, 780 (9th Cir. 1998) (applying summary judgment standard to motion for summary adjudication).

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the

portions in the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1992). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. at 587.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

California law provides that a covenant of good faith and fair dealing is an implied term in every contract. Egan v. Mutual of Omaha Ins. Co., 24 Cal. 3d 809, 818 (1979). The so called "implied covenant" imposes a burden, beyond the contract's express terms, that "neither party will do anything which will injure the right of the other to receive the benefits of the agreement." Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973). Since breach of the implied covenant involves more than a failure to satisfy the contractual duty itself, "it has been held that '[b]ad faith implies unfair dealing rather than mistaken judgment.'" Chateau Chamberay Homeowners Ass'n v. Associated Int'l Ins. Co., 90 Cal. App. 4th 335, 345 (2001), citing Congleton v. Nat'l Union Fire Ins. Co., 189 Cal. App. 3d 51, 59 (1987). In the insurance context, the implied covenant goes beyond literal policy requirements to defend, settle, or pay qualifying claims, and instead encompasses the insurer's obligation to act fairly and in good faith in discharging those contractual responsibilities. Id. at 346, citing California Shoppers, Inc. v. Royal Globe Ins. Co., 175 Cal. App. 3d 1, 54 (1985). Breach of the covenant entails a "conscious and deliberate act, which unfairly frustrates the agreed common purposes [of the contract] and disappoints [a party's] reasonable expectations . . . ." Careau & Co. v. Security Pacific Business Credit, Inc., 222 Cal. App. 3d 1371, 1395 (1990).

///

### A. Genuine Dispute Doctrine

Even if policy benefits are mistakenly withheld, an insurer's decision in that regard does not expose it to bad faith liability under the implied covenant if the decision is "based on a legitimate dispute as to the insurer's liability under California law." Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1280-81 (1994). A "legitimate dispute" simply means that reasonable minds could differ about the value of the claim. Rappaport-Scott v. Interins. Exch. Of the Auto. Club., 146 Cal. App. 4th 831, 839 (2007); Chateau Chamberay, 90 Cal. App. 4th at 350-51. To trigger bad faith liability for any delay or denial in the payment of policy benefits, on the other hand, "it must be shown that the insurer acted unreasonably or without proper cause." Chateau Chamberay, 90 Cal. App. 4th at 347, citing Dalrymple v. United Services Auto. Ass'n, 40 Cal. App. 4th 497, 520 (1995). "[W]here there is a **genuine issue** as to the insurer's liability under the policy for the claim asserted by the insured, there can be no bad faith liability imposed on the insurer for advancing its side of that dispute." Id. (emphasis in original). Bad faith, on the other hand, "implies dishonesty, fraud, and concealment." Merrit v. Reserve Ins. Co., 34 Cal. App. 3d 858, 876.

Here, because Plaintiffs are insureds under GEICO's policy for purposes of their entitlement to uninsured motorist benefits under the terms of the GEICO policy, these precepts apply to GEICO's adjustment of Plaintiffs' first party claims. GEICO argues that the parties' disagreement as to the value of Plaintiffs' injuries under its uninsured motorist coverage presents just the kind of "genuine issue" identified by the case law as precluding liability for breach of the implied covenant. As the Ninth Circuit has recognized, "the genuine issue rule in the context of bad faith claims allows a district court to grant summary judgment when it is undisputed or indisputable that the basis for the insurer's denial of benefits was reasonable—for example, where even under the plaintiff's version of the facts there is a genuine issue as to the insurer's liability under California law." Amadeo v. Principal Mut. Life Ins. Co., 290 F.3d 1152, 1161 (9th Cir. 2002). Significantly for purposes of the present matter, a genuine issue can exist if "an

10

arbitrator awards substantially lower damages than Plaintiff claims." Maynard v. State Farm Mut Aut. Ins. Co., 499 F. Supp. 2d 1154, 1160 (C.D. Cal. 2007). A genuine issue may also present where an insurer "relies[s] on opinions from experts while evaluating the insured's claim." Id.

In the present matter, GEICO's last offer, short of arbitration, to settle all three claims was $52,955 made in October of 2017. DUF No. 30. That offer was made after GEICO decided to obtain independent medical examinations given the fact that Plaintiffs still claimed to experience ongoing symptomatology at the time of their depositions in October of 2016 even though they had obtained no accident-related treatment since June of 2015, nearly a year and a half beforehand. The offers allowed for the entirety of Plaintiffs' claimed medical specials of some $26,955, plus a roughly equal amount for general damages premised on a three-month period of treatment and taking into consideration the independent medical examiner's opinion that Plaintiffs' accident related injuries had resolved. As indicated above, the only response Plaintiffs made to GEICO's offer was to demand $151,955 by way of counsel's arbitration brief served on October 25, 2017, some six days before the October 31 hearing. AOE, Ex 13, pp. 756-63.

The nearly $100,000 discrepancy between the parties' respective settlement positions prior to the uninsured motorist arbitration are attributable to differences in their valuation of general, "pain and suffering" damages. Evaluating such damages is an inherently subjective process. In Holenda v. Infinity Select Ins. Co., No. CV13-07128R (CWx), 2014 WL 559381 (C.D. Cal. Feb. 13, 2014), the plaintiff's uninsured motorist carrier, Infinity, offered some $20,000 in "new money" to resolve Holenda's injury claim with respect to which it had already paid $5,000 in medical payments coverage. Holenda, on the other hand, argued his special damages alone exceeded $130,000. Id. at *2. The arbitrator ultimately awarded only $13,534 of those claimed specials and

///

///

1    added an additional $57,842 in general damages for pain and suffering.[5]  Although the
2    aggregate amount awarded was less than ten percent of the damage figure that Holenda
3    had sought (id. at *4), he nonetheless filed a bad faith claim alleging that Infinity's
4    handling of his claim breached the implied covenant of good faith and fair dealing.

5    After noting that withholding insurance benefits is not unreasonable if there is a
6    "genuine dispute" as to the amount of payment due, the Holenda court noted that a bad
7    faith claim can be dismissed on summary judgment if the defendant can show that such
8    a genuine dispute exists.  Id. at *3-4, citing Guebara v. Allstate Ins. Co., 237 F.3d 987,
9    992 (9th Cir. 2001).  Significantly, the court further recognized that identifying a genuine
10   dispute requires only a reasonable and legitimate difference in opinion; which party is in
11   fact "right" as to the disputed matter need not be decided.  Id. at *4.

12   With respect to general damages in particular, Holenda recognized their
13   subjective nature, noting that "[t]ranslating pain and anguish into dollars can, at best, be
14   only an arbitrary allowance, and not a process of measurement."  Id., citing Beagle v.
15   Vasold, 65 Cal. 2d 166, 172 (1966).  The court further noted that the amount to be
16   awarded for such damages is "a matter on which there legitimately may be a wide
17   difference of opinion" (id., citing Seffert v. Los Angeles Transit Lines, 56 Cal. 2d 498, 508
18   (1961)), and "are inherently subject to genuine dispute."  Id.

19   Applying these principles to the case before it, the Central District found that the
20   amount of general damages due Holenda was indeed subject to a genuine dispute, and
21   therefore barred his claim for bad faith and entitled Infinity to summary judgment.  Id.

22   This Court believes Holenda's reasoning is equally applicable to the case at bar.
23   GEICO offered approximately double the amount of Plaintiffs' damages to resolve their
24   claims prior to arbitration, with Plaintiffs themselves arguing that they were entitled to
25   nearly six times that amount.  General damages account for the difference between the
26   parties' respective positions.

---

[5] Because the applicable uninsured motorist policy limit was $50,000, the arbitrator's actual award was limited to that amount.

In addition, the Central District recognized the disparity between Holenda's demand and the amount of the arbitrator's ultimate award as further demonstrating a genuine dispute. Id. Here, the arbitrator's collective award of $80,955 was considerably closer to GEICO's offer of $52,955 than the $151,955 evaluation posited by Plaintiffs. This shows, like Holenda, a genuine dispute that precludes Plaintiffs' entitlement to damages for breach of the implied covenant, thereby making summary judgment in GEICO's favor proper. See also Keshish v. Allstate Ins. Co., 959 F. Supp. 2d 1226, 1237 (C.D. Cal. 2013), ("a substantial difference between the amount of loss a plaintiff claims and the amount of loss ultimately found by an arbitrator can conclusively determine that a genuine dispute existed," citing Rappaport-Scott v. Interinsurance Exchange of Auto. Club, 146 Cal. App. 4th 831, 839 (2007))

Plaintiffs' efforts to evade summary judgment are unavailing. While they argue that computerized case evaluation tool employed by GEICO was somehow unfair, all GEICO personnel involved in adjusting the claim attest to their own extensive training and experience in the assessing bodily injury claims[6] and Plaintiffs offer no more than speculation and conjecture that the evaluation program was anything other than a tool to assist in that process. Moreover, Plaintiffs' argument that GEICO unduly delayed the adjudication of their claim also misses the mark since claimants never authorized GEICO to obtain their medical records to assist in the evaluation of their claims, making GEICO unable to obtain that critical information until after formal uninsured motorist proceedings were commenced in June of 2016, more than a year after claimants had finished treating.[7]

///

---

[6] See, e.g., Decl. of Fawn Harding, ECF No. 61-4, ¶ 2; Decl. of Amber Meyer, ECF No. 61-5, ¶ 2; Decl. of Bill Webster, ECF No. 61-7, ¶ 2.

[7] GEICO argues that claimants' failure to provide the necessary medical authorizations also entitles them to summary judgment on claimants' sole cause of action for breach of the covenant of good faith and fair dealing. Because the court has determined in this Memorandum and Order that summary judgment is appropriate on other grounds, it need not rule on that additional argument and declines to do so.

**B.     Statute of LImitations**

Summary judgment also appears proper here for an additional reason.  Under California law, the statute of limitations for breach of the implied covenant of good faith and fair dealing is two years.  <u>Archdale v. Am. Internat. Specialty Lines Ins. Co</u>., 154 Cal. App. 4th 449, 467 n. 19 (2007).  The California Supreme Court has held that a cause of action accrues for statute of limitations purposes when "events have developed to a point where plaintiff is entitled to a legal remedy."  <u>Davies v. Krasna</u>, 14 Cal. 3d 502, 513 (1975).  "The infliction of appreciable and actual harm, however uncertain in amount, will commence the statutory period . . . . [N]either uncertainty as to the amount of damages nor difficulty in proving damages tolls the period of limitations."  <u>Id.</u> at 514.  Significantly, in the context of a bad faith lawsuit arising from an uninsured motorist claim like this one, completion of arbitration is not a prerequisite for a bad faith claim to accrue.  <u>Singer v. State Farm Mut. Auto. Ins. Co.,</u> 116 F.3d 373, 378 (9th Cir. 1997).

Here, correspondence from Plaintiffs' own counsel denotes the accrual of their alleged bad faith claim.  By letter dated April 15, 2016, attorney Gavrilov claimed GEICO's offers to his clients were "egregious," with the carrier "acting in bad faith." AOE, Ex. 3, p. 260.  Plaintiffs further admit that they suffered immediate harm as a result of the acts of bad faith identified in that letter.  DUF No. 15.  As such, their claim for bad faith accrued by their own admission as of April 15, 2016, yet the instant lawsuit was not filed until September 18, 2018, two years and five months later.  Significantly, Plaintiffs do not dispute that this was after the statute of limitations had expired, or oppose summary judgment on that basis.  Plaintiffs' claims are thus barred by the statute of limitations as well.

///
///
///
///
///

**CONCLUSION**

For the reasons set forth above, Defendant GEICO's Motion for Summary Judgment (ECF No. 61) is GRANTED in its entirety. The Clerk of Court is accordingly directed to enter judgment in GEICO's favor and to close the file.

IT IS SO ORDERED.

Dated: July 21, 2022

MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE